142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald L. JACKSON, Petitioner-Appellant,
v.
Al C. PARKE, Respondent-Appellee.
 No. 97-3743.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 30, 1998.*
Decided April 30, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 97 C 254, Allen Sharp, Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon WALTER J. CUMMINGS and Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Donald Jackson appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The district court issued a certificate of appealability with respect to the following issues whether the state court improperly admitted into evidence a statement that Jackson made to police officers regarding his involvement in a bank robbery and murder; and whether the state court improperly refused to strike for cause two potential jurors. We affirm the denial of the habeas petition.
 
 
 2
 On October 9, 1986, Michelle Seagraves left her apartment in Columbus, Ohio, got into her car, and turned the engine. Just as Seagraves prepared to drive away, Stuart Kennedy forced himself into her car, pushed her into the passenger seat, and drove to Moores Hill, Indiana. Kennedy was joined on the trip to Indiana by Donald Jackson, who followed behind Seagraves's blue Granada in his own car, a white Corvette. Upon arriving in Moores Hill, Kennedy murdered Seagraves by a combination of strangulation, bludgeoning, and a bullet to the head. Kennedy and Jackson then used Seagraves's car as the getaway car in robbing the People's National Bank in Moores Hill. Witnesses provided the police with the license plate numbers of both cars, and police quickly learned Jackson's identity. On the morning of October 10, 1986, police arrested Jackson at his home in Columbus.
 
 
 3
 Homicide detective Clarence Sorrell of the Columbus Police Department sat down with Jackson to discuss the incidents of the day before. Sorrell read Jackson his Miranda rights and placed in front of him a written copy of his Miranda rights and a waiver of rights form. Sorrell asked Jackson if he understood his rights and indicated his desire for Jackson to sign the waiver form Jackson then asked: "Is it possible to have a lawyer here?" Sorrell responded: "It's possible. Do you ... know a lawyer that would come in here?" Jackson did not specifically answer this question but said: "I'd just like somebody here with me" and "I need help." Jackson then signed the waiver form and talked to Detective Sorrell about the kidnaping and robbery.
 
 
 4
 Jackson was tried in the Circuit Court of Franklin County, Indiana, and a jury found him guilty of robbery, kidnaping, murder, and felony murder. Although the jury recommended against the death penalty, the trial judge rejected the jury's recommendation and sentenced Jackson to death Jackson appealed his death sentence and many of the trial court's rulings. The Indiana Supreme Court set aside Jackson's death sentence but rejected all of his other arguments. Jackson v. State, 597 N.E.2d 950 (Ind.1992). On remand, the trial judge sentenced Jackson to 160 years in prison. Jackson again appealed his sentence and the Indiana Supreme Court affirmed Jackson v. State, 625 N.E.2d 1219 (Ind.1993).
 
 
 5
 On April 14, 1997, Jackson filed a petition for a writ of habeas corpus in the District Court for the Northern District of Indiana, which the district court denied. Jackson then filed a certificate of appealability, which the district court granted as to the following issues: (1) whether Jackson's statement to Detective Sorrell on October 10, 1986 was properly admitted under the Fifth and Fourteenth Amendments, and (2) whether Jackson's Sixth Amendment right to an impartial jury was denied when the trial court denied Jackson's for cause challenges of two potential jurors. Because Jackson's habeas petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), governs our analysis. Lindh v.. Murphy, 96 F.3d 856, 866 (7th Cir.1996), rev'd on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), Holman v. Gilmore, 126 F.3d 876, 880 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1169, 140 L.Ed.2d 179, 1998 WL 83995 (March 2, 1998). Under AEDPA, a writ of habeas corpus may issue with respect to issues decided on the merits in the state courts only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2).
 
 
 6
 Jackson first argues that the Indiana trial court violated his Fifth and Fourteenth Amendment rights when it admitted into evidence the statement he made to Detective Sorrell on October 10, 1986. Specifically, Jackson contends that because the statement was made after he invoked his right to counsel, the admission of this statement into evidence at trial violated his constitutional right against self-incrimination.
 
 
 7
 Under Miranda v. Arizona, 384 U.S. 436, 469-73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a suspect who invokes his right to counsel is not subject to further police interrogation until counsel is present or the suspect initiates further conversation. However, to invoke his right to counsel and prevent further interrogation, a defendant must unambiguously request the assistance of counsel. Davis v. United States, 512 U.S. 452, 458-60, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In Davis, the defendant's statement, "Maybe I should talk to a lawyer" did not invoke the right to counsel because the statement was not clear enough to alert a reasonable police officer that he was requesting an attorney. Id. at 458-62.
 
 
 8
 In this case, Jackson asked Detective Sorrell "Is it possible to have a lawyer here?" and then stated "I'd just like somebody here" and "I need help." These statements do not constitute an unequivocal request for counsel. In fact, Jackson's statement "Is it possible to have a lawyer here?" is quite similar to the defendant's statement in Davis ("Maybe I should talk to a lawyer"), which the Supreme Court found ambiguous Moreover, even after Detective Sorrell gave Jackson an affirmative response to his question about the possibility of getting a lawyer, Jackson did not mention the word "lawyer" again. Rather, he indicated a need to see "somebody" and for "help." As such, the Indiana Supreme Court's conclusion that Jackson did not invoke his right to counsel was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.
 
 
 9
 Jackson also argues that his Sixth Amendment right to a fair and impartial jury was violated by the trial court's refusal to grant challenges for cause of two jurors, Arthur Peters and David Rehberger. Jackson contends that both Peters and Rehberger clearly demonstrated during voir dire that they were unable to be fair and impartial, yet the court refused to strike them for cause and thus forced him to use two preemptory challenges to remove them from the jury pool.
 
 
 10
 The Supreme Court has held that a challenge based on the Sixth Amendment requirement of an impartial jury requires only a review of those jurors who actually sat on the jury--as opposed to those who were dismissed. Specifically, the Court has held that "[a]ny claim that the jury was not impartial ... must focus not [on the challenged juror who was removed by the peremptory strike], but on the jurors who actually sat." Ross v. Oklahoma, 487 U.S. 81, 86, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). As long as the jury that sits is impartial, "the loss of a preemptory challenge [does not] constitute[ ] a violation of the constitutional right to an impartial jury...." Id. at 88. See also Pitsonbarger v. Gramley, 103 F.3d 1293 (7th Cir.1996), vacated on other grounds, --- U.S. ----, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997) (district court's refusal to strike a juror for cause, causing defendant to use a peremptory challenge, did not violate the Sixth Amendment).
 
 
 11
 In this case, Jackson does not contend that the jury that convicted him was biased and partial. Rather, he argues that Rehberger and Peters were biased and should have been stricken from the jury pool in a manner that did not involve the use of his valuable preemptory challenges. However, because neither Peters nor Rehberger sat on the jury, Jackson's Sixth Amendment right was not violated.
 
 
 12
 Jackson also raises several other claims that were not included in the district court's certificate of appealability. These are: that the trial court abused its discretion in granting the government's for cause challenge of juror Gaylene Wyatt; and that the trial court erred in refusing to grant Jackson three additional preemptory challenges. This court treats these additional claims "as an implicit request for a certificate of appealability from this court. Accordingly, we must decide whether ... he has made a substantial showing of the denial of a constitutional right." Williams, 133 F.3d at 975. Jackson fails to make such a showing. He cannot make out a Sixth Amendment violation based on the removal of Mrs. Wyatt from the jury pool because he fails to demonstrate that the jury itself was partial. As for the trial court's refusal to grant Jackson additional peremptory challenges, Jackson raises this argument for the first time before this court and therefore failed to properly preserve the issue Id. at 973.
 
 
 13
 The district court's denial of Jackson's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)